(No. 18925.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* ANDREW KREJEWSKI *et al.* Plaintiffs in Error.

*Opinion filed October 25, 1928.*

A. J. BEDARD, for plaintiffs in error.

OSCAR E. CARLSTROM, Attorney General, ROBERT E. CROWE, State's Attorney, and JAMES B. SEARCY, (HENRY T. CHACE, JR., and EDWARD E. WILSON, of counsel,) for the People.

Mr. JUSTICE HEARD delivered the opinion of the court·

Plaintiffs in error, Andrew Krejewski and Stanley Gorz, were convicted in the criminal court of Cook county of the crime of robbery with a gun. They bring the record of their conviction to this court for review upon writ of error.

On the evening of June 4, 1927, at about 10:30 o'clock, Louis Grant, who operated a fruit store at the corner of Richmond street and Archer avenue, in Chicago, and the only witness to identify the defendants at the trial, was waiting on a customer in his store when two young men came in, one with two revolvers and the other with one, ordered him (Grant) to open the cash register, and one appropriated the money while the other stood guard over the customer. There were also present in the store and living rooms in the rear, at the time of the alleged robbery, an employee by the name of George, Mrs. Grant, and Joe Hakowski, a boy twelve and a half years old, employed there. Two officers, John Bragiel and Ben W. Engel, testified they arrested the defendants on the 15th of June, 1927. Grant was called to the police station to identify the boys. He did not identify Gorz as one of the robbers and he was released from custody. Grant testified at the trial that he identified Krejewski at the police station. The officer in charge testified that they brought Krejewski in with two other prisoners and had Grant look at them. He testified

with reference thereto: "I asked him if he saw any person or prisoner in that bunch that he knew at the cell room, and he did not. When the prisoners went back he thought it was one of the fellows, and we brought him back again, and he then identified him at that time." Krejewski was taken before a magistrate for a preliminary hearing the next day, at which time Grant testified that he identified Gorz, who had come to the hearing as a witness. Mrs. Grant, who saw one of the robbers, was a witness but was not asked as to whether she identified plaintiffs in error. Joe Hakowski, a boy twelve and a half years of age, in the fourth grade at the St. Pancratius school and employed in Grant's store at the time, testified that plaintiffs in error were not present at the time of the robbery. Leo Novak, the customer present at the time of the robbery, testified that he could not identify the defendants as the robbers.

Plaintiffs in error in their defense testified that they were about the ages of eighteen; that Gorz was employed by Marshall Field in the china department, and Krejewski was employed by the Crane Company, running a milling machine; that both lived with their parents; that on the night of the alleged robbery they, in company with others, among whom was Frank Cwikla, who lived with his parents and was employed by the Smith Manufacturing Company, and Ben Ozark, who lived with his parents and was then employed by the Pittsburg Glass Company, and had been for the past three years, as an engraver on glass, moved the furniture for a Mrs. Mary Smolik on the evening of June 4, 1927, and from eight o'clock until a quarter after eleven were so employed. Cwikla, Ozark and Mrs. Smolik also testified to the same facts.

The evidence as to the guilt of the defendants was not of that clear and convincing character that the jury could not reasonably have rendered a verdict of not guilty. To sustain their conviction it is therefore necessary that the record be free from prejudicial error.

Mrs. Smolik was asked by the assistant State's attorney, on cross-examination, if on the Monday following her moving she did not go to the police station and make a complaint that one of "these boys" stole some money from her. While an objection to this particular question was sustained, she was allowed to testify, over objection, that on the night the boys moved her furniture she lost some money and on "Monday went to the police station and signed something, she did not know what for." This evidence did not in any way tend to prove the issue which the jury was trying, and the questions of the assistant State's attorney and her answers were necessarily prejudicial to the defendants.

Prior to the calling of Novak as the court's witness the prosecution called two police officers and interrogated them as to statements made by Novak to them with reference to his identification of Gorz and Krejewski, and allowed them to testify that Novak had stated to them that they were the right fellows and that he identified them. This evidence was merely hearsay. It is error to permit a police officer to testify that a witness identified one accused of crime. (*People* v. *Lukoszus,* 242 Ill. 101.) While a portion of this evidence was stricken out by the court, the error in its admission was emphasized by the gross misconduct of the assistant State's attorney, Mueller, who said in his opening argument to the jury: "Novak came in yesterday morning and the court called him as his witness. So the State had an opportunity to cross-examine him. Why? Because at the time of the robbery, or shortly thereafter, he made one statement in the police station that did not coincide with his statement to me yesterday." In the discussion of the admissibility of this evidence the following took place:

Mr. Mueller: "Let me ask a question, and if the answer is not responsive what I think, I will ask to have it stricken out.

Mr. Bedard: "I object. I don't think the court should give counsel permission to do so, notwithstanding the fact

that he is willing to have it stricken out. The testimony leaves an impression upon the minds of the jury, and that impression will be prejudicial to the defendants. You can not remove the impression.

Mr. Mueller: "Judge, I would be the first one to say so if I thought we did not have sufficient evidence to convict.

Mr. Bedard: "I object to the remarks of counsel. When did a State's attorney ever admit that?

The court: "I don't think—if it is not competent evidence, why, we will strike it out. Ask it, and if it is not—"

Several pages of the abstract are taken up with a colloquy of this character, the assistant State's attorney seeking to secure the introduction of the hearsay testimony of the officers. It was error for him to seek to secure the admission of this incompetent testimony, which, even though it should be afterwards stricken out, must necessarily have left an impression upon the minds of the jury unfavorable to the defendants. It was likewise highly improper for him to express an opinion at that stage of the case that they had sufficient evidence to convict.

The court at the request of the State's attorney called as a court witness Leo Novak, the customer who was present at the time of the robbery, and not only examined him as to the occurrence in question, but put him through a most searching and exhaustive cross-examination as to his identification of the defendants. This examination, which is set out by question and answer, occupies over twenty-two pages of the abstract. It is contended by plaintiffs in error that the court's examination of this witness was error. While in *Carle* v. *People*, 200 Ill. 494, it was held that under proper circumstances the court could, at the request of an attorney in the case, call a witness as the court's witness, allowing the witness to be cross-examined by both parties, and this practice has since been recognized in numerous cases, among them *People* v. *Cleminson*, 250 Ill. 135, *People* v. *Baskin*, 254 id. 509, *People* v. *Cardinelli*, 297 id. 116,

and *People* v. *Dascola,* 322 id. 473, this court in *People* v. *Bernstein,* 250 Ill. 63, upon this subject said: "This court, however, has more than once said that the examination of witnesses is the more appropriate function of counsel, and the instances are rare and the conditions exceptional which will justify the presiding judge in conducting an extensive examination. It is always embarrassing for counsel to object to what he may deem improper questions by the court. Then, in conducting a lengthy examination it would be almost impossible for the judge to preserve a judicial attitude. While he is not a mere figurehead or umpire in a trial. and it is his duty to see that justice is done, he will usually not find it necessary to conduct such examination. The extent to which this shall be done must largely be a matter of discretion, to be determined by the circumstances of each particular case, but in so doing he must not forget the function of a judge and assume that of an advocate. ( *O'Shea* v. *People,* 218 Ill. 352; *Dunn* v. *People,* 172 id. 582.) * * * Such a practice is not to be commended, and can only be permitted when it is shown that otherwise there may be a miscarriage of justice. We are convinced that in the examination of the witnesses by the trial judge, doubtless unconsciously on his part, he made statements and asked questions in such a form as would almost certainly lead the jury to conclude that he thought the plaintiff in error was guilty. We are impressed from a reading of the record that the questions of the judge would appear to the jury to be in the interest of the prosecution. Expressions of opinion by the judge are liable to have great weight with the jury, and therefore especial care should be observed that nothing be said by him to the prejudice of either party,—*Lycan* v. *People,* 107 Ill. 423; *Synon* v. *People,* 188 id. 609." This quotation is most appropriate to the situation here involved.

The court allowed the prosecution to impeach Novak's testimony by the testimony of Grant, to the effect that No-

vak told him, after Krejewski was arrested, that the police officers had the right man. While the State had a right to submit a witness, called by the court as a court witness at the request of the State, to a most rigid and searching cross-examination, it was not competent for the State, under guise of the impeachment of such witness, for whose veracity the defendants had not vouched and for whose statements made out of court they were in nowise responsible, to introduce hearsay statements, made out of the presence of the defendants, that the witness had identified the defendants as the persons who committed the robbery. The ordinary juror hearing such evidence would be most likely to consider it as substantive evidence of the guilt of the defendants.

From a careful examination of the record we are of the opinion that the defendants have not had that fair and impartial trial to which the law entitled them, and the judgment of the criminal court of Cook county is therefore reversed and the cause remanded.

*Reversed and remanded.*