THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* LAWRENCE COLEMAN (Impleaded), Defendant-Appellant.

(No. 57475;

First District (2nd Division)—January 29, 1974.

Paul Bradley, Deputy Defender, of Chicago (Howard B. Augustus, Assistant Appellate Defender, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (James S. Veldman and Jonathan Gilbert, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE STAMOS delivered the opinion of the court:

Lawrence Coleman was found guilty of robbery by a jury and was sentenced to a term of four to ten years in the penitentiary. On appeal defendant urges reversal of the conviction on the grounds that the evidence was insufficient to support the conviction; that the prosecutor improperly argued facts not in evidence; and that he was denied a fair trial due to the introduction of prejudicial evidence. Alternatively, defendant contends, and the State concurs, that the sentence should be modified to conform to the applicable provisions of the Unified Code of Corrections. Resolution of defendant's first contention requires a summary of the evidence presented at trial.

James Terry, the complaining witness, and his companions on the night of August 29, 1970, Delcine Bell and Mary Harris, testified for the State. The three had met at a lounge where Mr. Terry, who had consumed a "couple of beers," had been shooting pool. At approximately 2:15 A.M., they took a cab to Madison and Loomis and proceeded to walk down Madison Street when three men approached and said something to Ms. Bell and Ms. Harris. The complainant, who had momentarily stopped to light his pipe, caught up with the group and asked the three men to leave the girls alone. At this point the three turned their attention to James Terry, grabbed him and forced him across the street where one of the three, later identified as defendant, pulled out a gun and robbed the victim of approximately $70. During this time, Ms. Bell and Ms. Harris flagged a second cab and told the driver to pull up to the four men who then broke and ran. Immediately thereafter a police car approached, was hailed by Terry, pursued the fleeing men, and apprehended Edgar Shorter, one of the three robbers.

The women, James Terry, and Edgar Shorter were then taken to the police station where complainant and Ms. Bell gave descriptions of de-

fendant. The victim stated that Coleman had a red streak in his hair; Ms. Bell indicated that two of the assailants had red coloring in their hair.

On October 2, 1970, James Terry saw defendant and the third robber at the intersection of Madison and Ogden. Upon seeing the complainant, they turned and walked away. The police were called, but no apprehension resulted. Approximately a week later, the victim identified Lawrence Coleman from a group of pictures shown to him by the police. On October 25, 1970, two officers accompanied Terry to the trauma ward of the Cook County hospital where Terry identified Coleman from a group of fifteen male patients. At that time, the victim "didn't think" that the accused then had a red streak in his hair.

Both Ms. Bell and Ms. Harris recalled at trial that two of the men had red streaks in their hair. Each witness identified defendant as one of the perpetrators of the crime but testified that they had not seen him from the night of the robbery until the day before trial.

Police officers Richard Topel, Robert Elam, and Clifford Berti testified for the State. Officer Topel had been in the police car hailed by Terry immediately after the robbery. He testified that Mr. Terry had identified his three assailants on the street, but that only Shorter had been apprehended. He also corroborated previous testimony that the area was illuminated by overhead mercury vapor street lights and by light emanating from a commercial establishment. The officer further testified that he detected a "weak" odor of alcohol on the victim's breath, but that Mr. Terry was "definitely sober."

Officers Elam and Berti had interviewed Edgar Shorter on the morning of the incident. Based on that conversation, they had attempted to obtain records and photographs of a "James Johnson." Their search had been unsuccessful, but subsequent investigation revealed that Lawrence Coleman had previously used the alias "James Johnson." The officers had then obtained photographs of Lawrence Coleman which were shown to the victim, who had then identified defendant. The officers had held another conversation with Shorter; based on this conversation, they had visited the Cook County Hospital and had ascertained that Lawrence Coleman was a patient. The victim subsequently had been brought to the hospital, where he had identified defendant who then had, according to the officers, a red streak in his hair.

Edgar Shorter, called by the defense, testified that he, one "Willie Smith," and one "James Johnson" had robbed James Terry near Madison and Throop Streets on August 30, 1970. He had been acquainted with Lawrence Coleman for several years, and had known him to use the alias James Johnson. However, Lawrence Coleman was not the "James

Johnson" with whom he had committed the robbery. Shorter further testified that he had been the only one with a red streak in his hair; that he had never known Lawrence Coleman to have a red streak in his hair; and that he had not told the police to go to the Cook County Hospital.

Elizabeth Coleman, defendant's mother, testified that defendant lived at home; that on the night of August 29, 1970, her son and his girl friend were at home with another couple, celebrating defendant's birthday; and that her son had never had a red streak in his hair.

On rebuttal, Officer Berti testified that Mrs. Coleman had told him that Lawrence did not live at home and that defendant's correct birth date was August 24.

Defendant initially contends that the evidence was insufficient to support the conviction in that it rested entirely upon identifications which were doubtful, vague and uncertain. Defendant cites *People v. Kidd*, 410 Ill. 271, 279, 102 N.E.2d 141, where it is said:

> "[I]dentification of one person by another who had never seen him before is an opinion or conclusion of the identifying witness, and the attendant circumstances, together with the probability or improbability of affording an opportunity for a definite identification, must be considered in weighing the evidence of one stranger by another."

Under this standard, defendant submits the following circumstances as reflective of an inconclusive identification: that Ms. Bell's testimony tended to indicate that the lighting conditions surrounding the incident were poor; that subsequent to the night in question neither Ms. Bell nor Ms. Harris had had an opportunity to see or identify defendant until the time of trial, which was almost a year later; that a discrepancy existed between the testimony of Mr. Terry and Officer Topel relating to the complainant's description of defendant prior to his apprehension; and finally, that none of the identifying witnesses had referred to any distinguishing facial characteristics of the accused.

The State urges that complainant's testimony by itself sufficiently supports the conviction, and that the absence of described facial characteristics is not controlling. We are referred to *People v. Miller*, 30 Ill.2d 110, 113, 195 N.E.2d 694, wherein the court stated:

> "Precise accuracy in describing facial characteristics is unnecessary where an identification is positive. * * * We have often held that the testimony of one witness alone, if positive and the witness credible, is sufficient to convict even though the testimony is contradicted by the accused. [Citations.]"

In support of its position, the State notes that the victim had ample

opportunity to observe defendant at close range. The entire incident—from the time the three men walked up to the girls to the time they fled—occurred in the span of seven or eight minutes. During that time complainant spoke with defendant several times; defendant dragged complainant across the street and upon reaching the other side, pulled out a gun and said "Put your hands up." Not only did the complainant have sufficient time to observe defendant in close proximity, but both complainant and Officer Topel testified to the presence of artificial lighting.

Although the State contends that complainant's testimony alone sufficiently supports the conviction, it further points to the corroborative testimony of his two companions and of the investigating officers. Both Ms. Bell and Ms. Harris substantiated complainant's version of the robbery and identified defendant as one of the assailants; both officers testified that while defendant was in the hospital he had a red streak in his hair.

■■ After a careful reading of the record, we have considered the relative contentions of the parties and conclude that the identification evidence was sufficient to support defendant's conviction beyond a reasonable doubt. A determination of guilt by a jury will not be set aside by a reviewing court unless it is palpably contrary to the weight of the evidence or so unsatisfactory as to cause a reasonable doubt of guilt. (*People v. Tribbett*, 41 Ill.2d 267, 242 N.E.2d 249.) Here, the in-court identification of defendant by the three witnesses was positive and unshaken on cross-examination. Nor do defendant's assertions persuade us to a different conclusion. Although Ms. Bell testified that it was dark at the time of the occurrence, her precise language was that "[i]t was dark, but not that dark." Further, although almost a year had passed between the night of the incident and the subsequent identification of defendant by the two women, their testimony relating to the in-court identification of defendant was clear and convincing. (See *People v. Hanisch*, 361 Ill. 465, 198 N.E. 220.) Finally, the discrepancy between complainant's testimony as to his initial description of defendant and the account thereof in the police report is not of a nature so substantial as to create a reasonable doubt of defendant's guilt. (See *People v. Terlikowski*, 83 Ill.App.2d 307, 227 N.E.2d 521.) Being insubstantial, the resolution of any discrepancy in the testimony was properly a matter for the jury's consideration and will not be disturbed on appeal. *People v. Nelson*, 127 Ill.App. 2d 238, 262 N.E.2d 225.

■■ Defendant further points to the testimony of Edgar Shorter and of defendant's mother, Elizabeth Coleman, in alleging the State's failure to meet its burden of proof. He cites several cases holding that plausible evidence of an alibi cannot be disregarded where the only evidence con-

tradicting it rests upon the identity of the defendant as the perpetrator of the crime charged, and where the entire record reveals reasonable doubt of guilt because of an uncertain identification. (*People v. Kidd, supra; People v. Cullotta,* 32 Ill.2d 502, 207 N.E.2d 444.) Although this is a correct statement of the law, it is inapplicable to the present facts. Here the identification was positive and corroborated. As such, the province of the jury, as the trier of fact, to believe certain witnesses and to disbelieve others, will not be infringed upon. *People v. Nicholson,* 55 Ill.App.2d 361, 204 N.E.2d 482.

Defendant next contends that the prosecutor argued facts not in evidence. More specifically, he complains of the prosecutor's reference, during closing argument, to defendant's "high cheekbones" and "beady eyes." The predicate of defendant's contention is that, although he had been in full view of the jury throughout the trial, no witness had testified as to his facial characteristics, nor had he taken the witness stand. Therefore, defendant urges, his facial characteristics were not in evidence and could not be commented upon by the prosecutor in emphasizing the unlikelihood of an incorrect identification. Inasmuch as defendant made no objection to this matter in the trial court, the prosecutor's reference to defendant's physical appearance does not present a reviewable issue. (*People v. Winters,* 29 Ill.2d 74, 193 N.E.2d 809). Moreover, we note in passing that photographs of defendant were admitted into evidence, thereby refuting the substance of his contention.

Defendant next argues that certain testimony identifying defendant as the perpetrator of the crime, was both incompetent and prejudicial hearsay. Of the several particulars alleged, we will consider the first separately. On direct examination of Officer Elam, the following colloquy occurred:

"PROSECUTOR: All right. And did you have a conversation with Mr. Shorter?

OFFICER ELAM: Yes, we did.

Q.: After this conversation, what did you then do?

A.: After this conversation, we went to the Cook County Hospital [where Lawrence Coleman was found and arrested]."

■■ In our judgment, the testimony was not hearsay. (See *People v. Carpenter,* 28 Ill.2d 116, 190 N.E.2d 738.) Officer Elam did not testify to the substance of the conversation, but merely to the fact that a conversation took place. As such, both the fact of the conversation and his subsequent conduct were within his personal knowledge and competent as testimony of the officer's investigatory procedure. McCormick, Law of Evidence (1954), § 227.

Turning now to the other particulars alleged by defendant, the record

reveals that investigator Elam testified that "Lawrence Coleman was identified by the victim" at the Cook County hospital, and that Officer Berti, after identifying two photographs of defendant, stated that they were the same photographs from which the victim had previously identified the defendant. No objection was made in the trial court, but defendant now urges that the admission of the hearsay evidence constituted "plain error" under Supreme Court Rule 615(a). (Ill. Rev. Stat. 1969, ch. 110A, par. 615(a); *People v. Wright,* 65 Ill.App.2d 23, 212 N.E.2d 126.) As supportive of his position, defendant cites the following: "It is error to allow a police officer to testify as to an out of court identification of the defendant, as a person accused of a crime." *People v. Reeves,* 360 Ill. 55, 195 N.E. 443; *People v. Krejewski,* 332 Ill. 120, 163 N.E. 438; *People v. Townsend,* 111 Ill.App.2d 316, 250 N.E.2d 169.

Although the foregoing proposition is correct as a general statement of law, a fair summary of authorities cited by defendant stands for the proposition that the admission of hearsay identification testimony constitutes reversible error only when it serves as a substitute for courtroom identification or when it is used to strengthen and corroborate a weak identification. However, if the hearsay testimony is merely cumulative (*People v. Smith,* 105 Ill.App.2d 8, 245 N.E.2d 23; *People v. James,* 109 Ill.App.2d 328, 248 N.E.2d 777; *People v. Lowe,* 112 Ill.App.2d 399, 251 N.E.2d 329; *People v. Campbell,* 113 Ill.App.2d 242, 252 N.E.2d 26), or is supported by a positive identification and by other corroborative circumstances (*People v. Reeves, supra; People v. Canale,* 52 Ill.2d 107, 285 N.E.2d 133), it constitutes harmless error. See also, *People v. Williams,* 16 Ill.App.3d 121, 305 N.E.2d 718; *People v. Keller,* 128 Ill.App. 2d 401, 263 N.E.2d 127.

■■ In the present case, the identification of defendant by Mr. Terry was positive and corroborated. The victim also testified as to both the hospital and photograph identification, thus resulting in the hearsay testimony being merely cumulative. Under these circumstances, we conclude that no plain error was committed.

It is next alleged that the State introduced inflammatory issues into the case under the guise of impeaching a defense witness. Defendant primarily complains of the prosecutorial questioning of Edgar Shorter on cross-examination. The witness testified that he had met the "James Johnson" who committed the robbery at a church in July of 1970. The prosecutor then asked the witness if he could recall his whereabouts on May 19, 1970. When the witness replied "No", the prosecutor requested a side-bar conference, submitted a document to the trial judge indicating that on May 19, 1970, the witness had been sentenced to 120 days in the house of correction for a misdemeanor, and inquired if he might use the

document for the limited purpose of showing that the witness could not have met the alleged James Johnson at a church in the month of July. After the prosecutor used the document to refresh the witness' memory, he asked a series of thirteen questions which forcefully highlighted the impossibility of the alleged meeting.

Defendant concedes that Shorter's initial statement about meeting James Johnson was incorrect, but argues that the prosecutor should have impeached his credibility by introducing the exact date of his release from the house of correction instead of needlessly "harassing" the witness.

■■ We believe that the cross-examination of Shorter did not constitute error. On direct examination, the defense attempted to establish that Shorter had referred to James Johnson other than defendant when identifying his accomplices to the police. It was therefore proper for the State to show, for the purpose of impeachment, that the witness could not have met any "James Johnson" at the time and place alleged. Defense counsel has not cited, nor can we find, authority which requires that impeachment, if proper in scope and as to subject matter, be conducted in a manner least damaging to the credibility of the witness. If the trial is fair in the legal sense, an opposite conclusion cannot be predicated upon the purported discourtesies incident to an adversary proceeding.

Defendant further alleges another instance of improper impeachment. On cross-examination, Edgar Shorter was asked the following questions:

> "PROSECUTOR: Isn't it a fact Mr. Shorter that you came to Court today to tell the ladies and gentlemen of the jury that Lawrence Coleman was not present on August 30, 1970 in order to make up for the fact that you in effect squealed on him to the police for that offense?
> DEFENSE COUNSEL: Objection.
> THE COURT: Sustained."

After defendant had rested his case, Officer Berti, called in rebuttal, testified: "Shorter gave the name of James Johnson. Later Shorter told me Coleman was at the County Hospital."

It is asserted by defendant that the "impeachment" of the witness was offered as substantive evidence of defendant's guilt. He relies upon *People v. Nuccio*, 43 Ill.2d 375, 253 N.E.2d 353, which reversed a conviction based upon unsupported and repeated prosecutorial innuendoes as to the prior misconduct of defendant and his witnesses, and *People v. McKee*, 39 Ill.2d 265, 235 N.E.2d 625 wherein the Illinois Supreme Court reversed a conviction where the trial court clearly employed impeaching hearsay statements of an alleged accomplice, who had been

made a court's witness, as substantive evidence of defendant's guilt.

■■ It is generally accepted that only the testimony given by the witness upon oath in court, subject to cross-examination is to be considered as substantive evidence, and that a prior contradictory statement of a witness is received into evidence only for the purpose of impeaching the credibility of the witness. When, under the guise of impeachment, prior inconsistent statements are used for purposes other than reflecting upon the witness' credibility, they are necessarily incompetent as hearsay. The delineation between proper and impermissible "impeachment" is detailed in *People v. Paradise*, 30 Ill.2d 381, 384, 196 N.E.2d 689:

> "While we have recognized the necessity for, and permitted the use of, contradictory statements for impeachment, we have also recognized the danger that the out-of-court statement may be taken by the jury as substantive testimony in place of the statement on the stand. * * * Accordingly, this court has refused to allow a conviction to be based solely on unsworn statements by witnesses * * *, or to permit such unsworn statements to be offered virtually for the purpose of using them as testimony. * * * And, to lessen the risk of the properly admitted prior inconsistent statement of a witness being considered by the jury as testimony, this court has required that the impeachment not be repetitious * * * and that the jury be clearly cautioned and instructed to limit its consideration of such evidence for its proper purpose. [Citations.]"

■■ As applied to the present case, we think the impeachment was proper. Shorter on direct examination had testified that he had never offered the name of James Johnson to the police, but that the name had been submitted by the investigating officers. He further testified that he had never told the police that James Johnson or Lawrence Coleman could be found at the County hospital. It was therefore proper to impeach the witness' credibility by introducing prior inconsistent statements relating to those matters. An objection to the prosecutor's question was correctly sustained for lack of a proper foundation. The matter was not further pursued at that time by the prosecutor, but was later supported by the rebuttal testimony of Officer Berti. We note that the impeachment was not repetitious, nor is there any indication that the trial court treated the statements as substantive evidence. Inasmuch as the record available to this court does not contain the instructions given below, and defendant does not raise the point of limiting instructions, we can only assume that the jury was properly instructed as to the limited use of such testimony. In light of these circumstances, we

conclude that the impeachment was proper. *People v. Neukom,* 16 Ill.2d 340, 158 N.E.2d 53; *People v. Moses,* 11 Ill.2d 84, 142 N.E.2d 1.

Defendant next contends that the State introduced evidence which by implication connected defendant with prior crimes. We are referred to the following testimony of investigator Elam:

> "A.: We then went back to 11th and State and pulled more records to further—and at that time, we were successful in obtaining a name and photographs.
>
> Q.: What name did you obtain?
>
> A.: Lawrence Coleman."

Although no objection was made at trial, defendant now asserts that the clear implication of this testimony is that the police department possessed records of defendant's other crimes, thus denying him a fair trial.

■■ Subject to exception, it is generally held that evidence of a distinct substantive offense, or evidence which tends to mislead or prejudice the jury, cannot be admitted in a prosecution for a different offense. (*People v. Ciucci,* 8 Ill.2d 619, 137 N.E.2d 40.) When the evidence of prior criminality is not direct, but merely inferential, the determinative issue is the probative and prejudicial effect of the nexus between the admitted and prior criminality. (See *People v. Maffioli,* 406 Ill. 315, 94 N.E.2d 191; *People v. Purnell,* 105 Ill.App.2d 419, 245 N.E.2d 635; *People v. Ogden,* 77 Ill.App.2d 312, 222 N.E.2d 329; compare *People v. Hudson,* 7 Ill.App.3d 333, 287 N.E.2d 297; *People v. Hawkins,* 4 Ill.App.3d 471, 281 N.E.2d 72; *People v. Williams,* 72 Ill.App.2d 96, 218 N.E.2d 771.) For example, although a prior criminal record may be inferred from the use of police photographs, their admission into evidence or testimony in reference thereto, is not error *per se.* (*E.g., People v. Maffioli, supra.*) In the present case, although we do not condone the reference to obtaining records and photographs at "11th and State", we believe the use of that term did not constitute reversible error (*People v. Ogden, supra.*), particularly since defendant took no steps to have it excluded from the record, or to have the jury instructed to disregard it. *People v. Burage,* 23 Ill.2d 280, 178 N.E.2d 389.

Defendant further assigns as error testimony implicating the defendant in an unrelated murder case. Edgar Shorter, testifying for the defense, and in response to a defense question, stated that the police were attempting to find Coleman "for murder." Defense counsel made no objection or appropriate motion. In rebuttal, the State mitigated the prejudicial effect of Shorter's testimony by explaining that Coleman had merely been mentioned as a suspect. The defense again made no objection.

■■ In *People v. Burage*, 23 Ill.2d 280, 282, 178 N.E.2d 389, the Illinois Supreme Court, in holding that no error could be assigned when the testimony of a State's witness, elicited by defense counsel, indicated that defendant had just "got out of the pen," stated:

> "While it may be agreed that the reference to defendant's prior incarceration in the penitentiary was completely incompetent and irrelevant, the State is not responsible for questions asked by the attorney for the accused, and neither is it responsible for the answers to such questions by the State's witnesses. * * * If a defendant procures, invites or acquieses in the admission of evidence, even though it be improper, he cannot complain. * * * Furthermore, a trial court is not obligated to exclude improper evidence where a defendant makes no objection, does not move to exclude it or does not disclaim the answers. [Citations.]"

We believe the *Burage* decision is decisive in the instant case, and therefore reject defendant's contention.

■■ Finally, defendant points out that his sentence of four to ten years does not comply with the Uniform Code of Corrections which is applicable to cases pending on appeal after January 1, 1973. (*People v. Harvey*, 53 Ill.2d 585, 294 N.E.2d 269). Under the Code robbery is a Class 2 felony (Ill. Rev. Stat., 1972 Supp., ch. 38, par. 18—1(b)), and the Code provides that for Class 2 felonies, the minimum term should not be greater than one-third of the maximum term (Ill. Rev. Stat., 1972 Supp., ch. 38, par. 1005—8—1(c) (3)). Accordingly, the minimum sentence of 4 years will be reduced to a term of 3 years and 4 months.

For the foregoing reasons, the sentence is modified as indicated and the judgment of the trial court is affirmed.

Affirmed; sentence modified.

HAYES, P. J., and LEIGHTON, J., concur.