THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* ROBERT WARMACK, Defendant-Appellant.

First District (3rd Division)    No. 62436

Opinion filed December 2, 1976.

244

Raymond D. Pijan, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon, Joan S. Cherry, and Michael R. Lewis, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE McNAMARA delivered the opinion of the court:

Defendant, Robert Warmack, was charged with attempt murder, aggravated kidnapping, and aggravated battery of a nine-year-old girl. After a jury trial in the circuit court of Cook County, he was found guilty of attempt murder and aggravated kidnapping. Defendant was found not guilty of aggravated battery. The court sentenced him to 10 to 20 years on each of the two charges, the sentences to run concurrently. Defendant contends on appeal that the trial court committed reversible error in admitting certain hearsay evidence into evidence and that he was not proved guilty beyond a reasonable doubt.

Late in the morning on January 13, 1971, Kim Miller, nine years old, was asked by her mother to go to the local food store. On the way, she encountered the defendant who inquired if she also would pick up some items for his wife. Although Kim did not know defendant, she agreed and followed defendant to what he represented to her to be his residence. As they turned together into an alley, Kim testified that defendant pulled on her arm to make her follow. He released her when she screamed. Thereafter, Kim accompanied him of her own accord up to a second floor of an apartment building. They entered through the back door and

proceeded through the kitchen into the dining room. Kim testified that there was no furniture in the apartment and that it was in a messy state. She observed that the walls were dirty, that the kitchen sink was filled with paper, and that pink paper was scattered on the kitchen floor. Defendant pretended to call to his wife in the bedroom and informed Kim that his wife would be out shortly. Following a brief conversation, defendant instructed Kim to approach him. When she did, she saw that no one was in the bedroom.

At this point, defendant grabbed a cord which had been lying on the radiator, wrapped it around Kim's neck, and dragged the screaming girl backward into the bathroom. He maneuvered her, fully clothed, into the bathtub which was filled with hot water. The struggling girl managed to climb out of the bathtub by kicking defendant. However, he overpowered her and forced her back under the hot water. While defendant was holding her head under the water, Kim testified that she held her breath and "played dead" by letting her "arms and legs go." Defendant, apparently assuming that Kim had drowned, placed a plastic shower curtain over her and departed through the back door. Soaking wet, the sobbing girl left the apartment through the front door. She remembered that the cord from her neck had settled in the bottom of the bathtub, and that the shower curtain had remained partially in the water.

Mrs. Judy Walters, the girl's mother, testified that she ran into Kim on a streetcorner. Kim was soaking wet and crying hysterically. The mother flagged down a squad car which immediately transported the girl to a nearby hospital. Officer Robert Ford of the Chicago Police Department, who was driving the squad car, noted that steam was coming from the child's wet clothes. Detective Anthony Barrett of the Chicago Police Department met them at the hospital.

Kim provided the officers with a detailed description of her assailant. He was comparable in height and build with Officer Ford, who is 6' 4" and of thin to medium build. She stated that he had a mustache, but made no mention of whether or not he was missing any of his front teeth. She also gave a detailed description of the uniform her assailant was wearing. It was a brown or dark police type uniform which contained a white stripe on each pant leg. He wore a peaked uniform style cap similar to those worn by bus drivers or policemen. He also wore a fur-collared waist length leather jacket which had a "letter" on the sleeve.

A short time after she entered the hospital, the police officers escorted her back to the apartment which Kim identified as being the scene of the crime. Since the rear door was locked, they were unable at that time to gain entrance into the apartment. The officers noticed a trail of water in the hallway. The officers were unsuccessful in an attempt to obtain a key to the apartment from a neighbor. The neighbor did provide them with

the telephone number of the building's janitor, defendant in the present case. However, there was no answer when the officers called the number. The officers then broke a window panel in the rear door and let themselves in. The apartment was filthy and abandoned. In the bathroom, the officers observed that the bathtub was three-quarters full of warm water. They found an electric cord at the bottom of the bathtub, and a plastic shower curtain lay half in and half out of the water. No fingerprints were found.

The aforementioned neighbor informed the police officers that Kim's description of her assailant matched that of the janitor. Upon contacting the Department of Urban Renewal, the officers obtained defendant's name and address.

Officer Barrett testified that he and other police officers arrested defendant at his home and advised him as to his rights. Defendant stated that at approximately 10 or 10:30 of that morning he had taken a cab from a hospital to the apartment building in question. The cab waited while defendant stoked the furnace inside the building. Defendant stated that he had been wearing a uniform, but would not reveal where the cab subsequently had taken him. Officer Barrett further testified that on the evening in question defendant's wife brought his uniform to the police station. The uniform was brown with a yellow stripe on each pant leg and had a short jacket with "Kohn Security" or "Detective Agency" on the shoulder. The uniform was not introduced into evidence.

Officer Barrett had brought Kim and her mother to the police station earlier that day. Kim selected defendant at a lineup. The lineup consisted of five men of approximately equal height, weight and age. The officers did not tell Kim prior to the lineup that they had a man in custody whom they believed to be her assailant. Both Barrett and Kim's mother testified as to the lineup procedure prior to the girl taking the stand. Defendant presented no witnesses in his behalf.

Defendant first contends that the trial court committed reversible error in permitting the admission of certain hearsay testimony. The trial judge ruled early in the trial that, "I will not sustain an objection to a statement made to someone, but I will sustain an objection in an answer to the statement. Because that party is not available for cross-examination at this time but the declarant is." The practical effect of the ruling was to allow the State's witnesses to testify as to their half of a conversation in which they had been involved. The response of the other party was thus a subject for the deductive powers of the triers of fact. Defendant has provided numerous examples of this hearsay testimony being allowed into evidence. Of these examples, only those concerning identification of defendant by persons other than the victim could possibly be construed as serious error. The other examples pointed out by defendant concerned

harmless information: the mother's testimony informing her other daughter that she was going out to look for Kim because she was worried; Barrett's testimony that he had asked the neighbor whether the janitor possessed keys to the apartment; and Ford's testimony that he asked the neighbor if he knew the janitor's telephone number. In light of the substantial evidence presented by the State which correctly was introduced at trial, such testimony, though admittedly hearsay (see *People v. Carpenter* (1963), 28 Ill. 2d 116, 190 N.E.2d 738), was surely harmless error. The identification testimony though, must be more closely examined.

Defendant objected to specific lines of questioning by the State. The first concerned Officer Ford's testimony that when he had relayed Kim's description of . her assailant to the neighbor, the latter thought the description "sounded like the janitor." Secondly, defendant objected to Kim's mother describing the girl's identification of defendant at the lineup. Defendant did not object to Officer Barrett's description of the same procedure. We recognize that the above testimony should have been excluded because of the hearsay rule. It is a general rule that one witness may not testify to a prior identification of an accused by another person. *People v. Denham* (1968), 41 Ill. 2d 1, 241 N.E.2d 415; *People v. Wright* (1965), 65 Ill. App. 2d 23, 212 N.E.2d 126.

■■ Although the foregoing statement of law generally is correct, an exception does exist. This exception is clearly defined in *People v. Coleman* (1974), 17 Ill. App. 3d 421, 428, 308 N.E.2d 364:

> "* * * a fair summary of authorities cited by defendant stands for the proposition that the admission of hearsay identification testimony constitutes reversible error only when it serves as a substitute for courtroom identification or when it is used to strengthen and corroborate a weak identification. However, if the hearsay testimony is merely cumulative (*People v. Smith*, 105 Ill. App. 2nd 8, 245 N.E.2d 23; *People v. James*, 109 Ill. App. 2d 328, 248 N.E.2d 777; *People v. Lowe*, 112 Ill. App. 2d 399, 251 N.E.2d 329; *People v. Campbell*, 113 Ill. App. 2d 242, 252 N.E.2d 26), or is supported by a positive identification and by other corroborative circumstances (*People v. Reeves*, supra; *People v. Canale*, 52 Ill. 2d 107, 285 N.E.2d 133), it constitutes harmless error. See also, *People v. Williams*, 16 Ill. App. 3d 121, 305 N.E.2d 718; *People v. Keller*, 128 Ill. App. 2d 401, 263 N.E.2d 127."

Recent cases, though demonstrating concern for the State's continual use of such identification testimony, likewise have held that the testimony was harmless error if the evidence in the case was otherwise strong enough for a conviction. *People v. Smith* (1974), 18 Ill. App. 3d 859, 310 N.E.2d 734; *People v. Canale* (1972), 52 Ill. 2d 107, 285 N.E.2d 133.

Reviewing the evidence, we find the victim's testimony to be so detailed and positive as to render any of the above hearsay testimony concerning the identification as harmless error. The hearsay testimony was not utilized to strengthen a weak identification, since Kim, despite her youth, had provided an accurate and detailed description of defendant, including his uniform. Kim had spent a considerable amount of time with her assailant during the occurrence. She had also made a positive identification of defendant at a police lineup, and repeated this identification at trial. Her description of the occurrence was borne out by the police during their search of the apartment. Defendant was janitor of the building where the crime occurred, and had even placed himself at the building at the time in question. We conclude that the introduction of the hearsay testimony did not constitute reversible error.

■■ Defendant also contends that he was not proved guilty beyond a reasonable doubt. This court is aware that it must be cautious when a conviction is based on the sole eyewitness testimony of a child of tender years. (*People v. Crowe* (1945), 390 Ill. 294, 61 N.E.2d 348.) Illinois courts have long held that such a conviction should not stand unless the testimony is corroborated or otherwise clear and convincing. (*People v. Crowe; People v. Johnson* (1921), 298 Ill. 52, 131 N.E. 149.) In both *Crowe* and *Johnson*, the courts affirmed convictions based primarily on the testimony of seven- and eight-year-old children, respectively. Both courts noted that the testimony of each child was clear and convincing as well as partially corroborated by other evidence. The courts pointed out that it was within the province of the jury to determine the credibility of the witnesses.

■■ In the present case, the testimony of the nine year old victim was clear and convincing and it was corroborated by the testimony of the police officers and the admissions of the defendant. Kim's testimony was remarkably detailed and certain. She was neither hesitant nor shaken by cross-examination. Additionally, the officers corroborated her description of the premises; they found the bathtub containing warm water, a cord at the bottom of the tub, and a plastic curtain in the tub. The officers also learned from defendant that he was on the premises at the time in question. We find that defendant was proved guilty beyond a reasonable doubt.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

MEJDA, P. J., and DEMPSEY, J., concur.