THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
LAWRENCE ANTHONY, Defendant-Appellant.

First District (1st Division)    No. 79-1918

Opinion filed November 17, 1980.

James J. Doherty, Public Defender, of Chicago (Suzanne M. Xinos, Assistant Public Defender, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Marcia B. Orr, Adrienne Nacev-Noble, and Adam N. Stillo, Jr., Assistant State's Attorneys, of counsel), for the People.

Mr. PRESIDING JUSTICE GOLDBERG delivered the opinion of the court:

This appeal presents a situation, fortunately rare, involving armed robberies of a small business on three consecutive days. After a jury trial, Lawrence Anthony (defendant) was found guilty of armed robbery of a wig store, operated by Herbert R. Kim, on April 8, 1978. He was sentenced to 15 years and he appeals.

The record reflects separate testimony on defendant's motion to suppress his identification and in chief. A summary of all of the testimony should be sufficient regarding the motion and the case in chief.

Other than police officers, the three prosecution witnesses are persons of Korean descent. Kim, the owner of the business, testified through an interpreter. About 10:30 a.m. on April 8, 1978, a black person came into Kim's store. This person was armed with a gun. He asked Kim for money. Kim identified this man as the defendant. He gave defendant $20 and five cans of hair spray and defendant left. The same man with a gun in his belt had entered the store on April 7, 1978, and taken money from the cash register and Kim's pocket. The defendant also entered the shop on April 9 about 2:30 p.m. As defendant entered, Kim produced a gun and yelled at defendant to raise his hands and leave. Defendant obeyed.

On April 10, 1978, defendant entered the store with two police officers. Kim immediately shouted defendant was the man who had robbed him. Defendant wore the same clothes on April 7, 8 and 9: blue jeans jacket and pants, cap and sunglasses. On two occasions Kim told the police defendant was tall and weighed over 130 pounds. Kim viewed defendant for less than 5 minutes on April 7 and 10 minutes on April 8.

Julius Bronstein, a police officer for 26 years, testified he interviewed Kim after the robbery on April 9, 1978. He noted down Kim's description of the offender. On April 10 he spoke to Kim again and received the same description. That same day he saw three black persons on the sidewalk. One of them conformed to Kim's description. He stopped a passing squad car. He and Officer Silvestrini went over to the suspect. Bronstein asked this man to accompany him to Kim's store because of the holdups. The man said he was innocent. In court, Officer Bronstein identified the defendant as that person. He was wearing a brown cap, blue windbreaker, blue jeans and sunglasses.

The two officers entered the store with defendant preceding them. Kim said, "That is the man." A search of defendant disclosed no weapon. The testimony of Officer Silvestrini corroborated the testimony of Officer Bronstein.

Karen Kim is the 18-year-old daughter of the store owner. She is a high school senior. At times she assisted her father in the wig store. On April 8, 1978, about 10:30 in the morning, she was in the store serving a customer. A black man entered and walked toward her father. He was wearing blue jeans, a dark blue windbreaker, sunglasses and a hat. She was 15 to 20 feet away. It was daylight. The lights in the store were on. There was no trouble with the lighting. The black man, whom she identified as defendant, "looked a little nervous." Her father told her in Korean that this was the man that robbed them yesterday, the man has a gun and she should be careful. She then looked at the man more closely from all angles. The customer gave her $2 and left and the man walked toward her. Her father took the $2 from the cash drawer and gave it to defendant. Her father said it was early and there were no customers. Defendant then asked for hair spray and her father gave him five cans of it. Defendant then left. Defendant had been in the store from 10 to 15 minutes. In the case in chief, she testified she was looking at the defendant for 5 minutes. On the motion, she testified she looked at him for 2 or 3 minutes. He was 5 to 10 feet from her and they were face-to-face when her father gave him the money.

On April 10, 1978, she went to the police station with her father and a relative of her father named Soon Hoon Yang. She could not recall the conversation during the ride. She did know the police had a suspect in custody. The police officers told her to look at the lineup and tell them if she could select someone. She looked at the lineup and picked out the defendant. When Soon Yang was brought in, Karen acted as interpreter and told her to select the man who robbed the store. In court she identified a picture of the lineup. She picked defendant because she recognized him. He was "a little taller" than the others.

Soon Yang testified through an interpreter. She did not testify during the case in chief. She was present in the store on April 7, 1978. She was robbed at that time. In court, on hearing of the motion, she identified a picture of the lineup and pointed out the defendant thereon. Karen Kim told her to come down to the police station. She did not talk to Karen Kim about the case. They viewed the lineup separately and the police did not let them speak to each other. Karen told her she had picked someone out of the lineup but simply asked the witness if she could remember anyone in the lineup.

At the time of the holdup she and Mr. Kim were the only two persons in the store besides one customer. She remembers the robber was tall, black, wore blue jeans and she thought he was wearing a hat. She looked

at the man for a very short time, less than 5 minutes. The man was about 2 meters (about 6 feet) away from her.

Investigator Raymond Krull, a police officer for 18 years, conducted the lineup. He identified the defendant in court. At 8:30 p.m., Karen Kim and Soon Yang came to the police station. He told them they would view five men through a two-way mirror. Each man would walk toward them and they should advise him if they recognized anybody. The officer then spoke to the participants in the lineup. He told defendant he could choose his position. Defendant selected No. 3 position. The officer testified defendant was identified by both witnesses. He identified a picture of the lineup in court. Defendant was the only person wearing blue jeans and a blue jean jacket.

Defendant called as alibi witnesses his mother, two of his brothers, his cousin, and a friend. Since no reasonable doubt argument has been made, we need not summarize this testimony. Defendant raises three contentions.

## I.

Defendant first urges an intentional and impermissible suggestiveness in the pretrial identification process. The burden of proving that the lineup procedure was impermissibly suggestive rests upon the defendant. (*People v. Brown* (1972), 52 Ill. 2d 94, 100, 285 N.E.2d 1.) The frequently cited case of *People v. Blumenshine* (1969), 42 Ill. 2d 508, 511, 250 N.E.2d 152, expressly requires that the defendant must prove he was denied due process of law by suggestive and mistaken identification.

■■ Defendant first points out that the identification process commenced by a so-called showup in which he was exhibited to the complaining witness on a face-to-face basis without any lineup. This court has had occasion to note the existence of elements of "suggestiveness inherent in any showup identification procedure." (*People v. Lindsey* (1979), 72 Ill. App. 3d 764, 776, 391 N.E.2d 382.) However, the elements of exigency appearing in the instant case make it essential that we approve of the procedure here. The police officers recognized the defendant by descriptions in their possession. The officers first saw defendant on the day following the last armed robbery and in the same neighborhood. Under these circumstances, it was their duty to determine the identity of the defendant in the best interests of all concerned. (*Lindsey*, 72 Ill. App. 3d 764, 777; see also *Blumenshine*, 42 Ill. 2d 508, 512.) In the instant case we are dealing with three successive armed robberies on three consecutive days. The victim undoubtedly "had an excellent opportunity to observe the defendant at the time of the crimes * * *." *Blumenshine*, 42 Ill. 2d 508, 512; see also *People v. Manion* (1977), 67 Ill. 2d 564, 570, 367 N.E.2d 1313, *cert. denied* (1978), 435 U.S. 937, 55 L. Ed. 2d 533, 98 S. Ct. 1513.

Defendant also urges the lineup itself was suggestive because police telephoned Mr. Kim and asked him to bring his daughter and sister-in-law to the station; defendant was the tallest man in the lineup; he was apparently the only person in the lineup wearing blue jeans. All of these challenges to the lineup are answered by *People v. Martin* (1974), 24 Ill. App. 3d 710, 715, 321 N.E.2d 368. This court there pointed out that "lineup identifications have been upheld where the defendant was the only person wearing an article of clothing similar to one worn by the person who had committed the crime." This court also pointed out that any person called to view a lineup would necessarily conclude that some individual in the lineup might be the offender. This court fortified both of these observations with citation of authorities. Finally, as this court there pointed out, the "lineup photograph * * * substantially assisted 'judicial appraisal of the integrity of the identification process.' " *Martin*, 24 Ill. App. 3d 710, 716, quoting *People v. Pierce* (1972), 53 Ill. 2d 130, 136, 290 N.E.2d 256.

In the recent decisions of *People v. McKinley* (1977), 69 Ill. 2d 145, 151-52, 370 N.E.2d 1040, *cert. denied* (1978), 435 U.S. 975, 56 L. Ed. 2d 69, 98 S. Ct. 1623, and *Manion*, 67 Ill. 2d 564, 571, the Supreme Court of Illinois analyzed the reliability of an identification by application of the factors set forth by the United States Supreme Court in *Neil v. Biggers* (1972), 409 U.S. 188, 199, 34 L. Ed. 2d 401, 411, 93 S. Ct. 375, 382. Applying this teaching to the case before us, with due consideration to the fact that we are dealing with three armed robberies on consecutive days, we find a high level of compliance with each and all of these legal requirements. We conclude the defendant has failed to sustain his burden of proving the identification process was impermissibly suggestive.

One additional overriding issue is, in our opinion, decisive here. Even assuming that some criticism of the lineup procedure be demonstrated valid, where the in-court identification had a sufficient origin independent of any possibly suggestive procedures the courts of Illinois have unanimously held that a proper in-court identification is sufficient for a conviction. In other words, where the identification of the defendant had an adequate origin independent of the previous identification procedures, this factor renders irrelevant any suggestability in connection with said procedure. *People v. Williams* (1975), 60 Ill. 2d 1, 10-11, 322 N.E.2d 819; *People v. Allender* (1977), 69 Ill. 2d 38, 43-44, 370 N.E.2d 509.

In the instant case, two identifying witnesses viewed defendant in a store. The light was good and upon each viewing there was ample time to view the offender. One witness viewed the defendant on three consecutive days. Another witness viewed the defendant at close proximity at the time of the robbery on April 8. Both witnesses gave similar, accurate descriptions of defendant to the police shortly after that robbery. We are

impelled to conclude that there was a valid and sufficient independent basis for the in-court identifications. The verdict of guilty is supported by strong identification testimony.

## II.

Soon Yang testified on the motion to suppress evidence. She did not testify at trial. Officer Krull testified at trial that at the lineup Soon Yang identified defendant. This testimony was clearly hearsay. (See *People v. Rogers* (1980), 81 Ill. 2d 571, 411 N.E.2d 223.) Defendant objected to this testimony and now urges it constituted prejudicial error. Defendant cites and depends upon *People v. Coleman* (1974), 17 Ill. App. 3d 421, 308 N.E.2d 364. There, an investigator testified the defendant was identified by the victim. The point was raised that testimony by the police officer as to these identifying statements was hearsay. In this regard, as urged by defendant, the *Coleman* court pointed out that hearsay is incompetent "as a substitute for courtroom identification or when it is used to strengthen and corroborate a weak identification." But, *Coleman* continues and adds the following language (17 Ill. App. 3d 421, 428):

> "However, if the hearsay testimony is merely cumulative (*People v. Smith*, 105 Ill. App. 2d 8, 245 N.E.2d 23; *People v. James*, 109 Ill. App. 2d 328, 248 N.E.2d 777; *People v. Lowe*, 112 Ill. App. 2d 399, 251 N.E.2d 329; *People v. Campbell*, 113 Ill. App. 2d 242, 252 N.E.2d 26), or is supported by a positive identification and by other corroborative circumstances (*People v. Reeves*, [360 Ill. 55, 195 N.E. 443]; *People v. Canale*, 52 Ill. 2d 107, 285 N.E.2d 133), it constitutes harmless error. See also, *People v. Williams*, 16 Ill. App. 3d 121, 305 N.E.2d 718; *People v. Keller*, 128 Ill. App. 2d 401, 263 N.E.2d 127."

■■ In the case before us, the testimony of Officer Krull was harmless and inconsequential error. As shown, there are two strong in-court identifications of the defendant. Thus, the testimony of Officer Krull was not a substitute for courtroom identification and it was not used to strengthen or corroborate a weak identification.

We note also that a cursory check by citator shows the following authorities among others which cite and approve the principle thus established by *Coleman*. (*People v. Mosley* (1979), 71 Ill. App. 3d 808, 813, 390 N.E.2d 364; *People v. Riley* (1978), 63 Ill. App. 3d 176, 181, 379 N.E.2d 746; *People v. Smith* (1978), 59 Ill. App. 3d 480, 489, 375 N.E.2d 941, *appeal denied* (1978), 71 Ill. 2d 620; *People v. Warmack* (1976), 44 Ill. App. 3d 243, 247, 358 N.E.2d 76; and *People v. Daliege* (1976), 40 Ill. App. 3d 706, 709-10, 352 N.E.2d 247.) In *People v. Rogers* (1980), 81 Ill. 2d 571, 411 N.E.2d 223, the supreme court considered primarily the impact of the

hearsay rule upon competency of an artist's sketch. The court did not pass upon the issue found decisive in *Coleman* and the other cited cases.

## III.

The trial judge properly inquired from the venire as to whether any of them had ever been victims of a crime. Juror Linderall told the court, "My brother was murdered in his home by five blacks, in Omaha, Nebraska, February 14th, and he was buried on the 17th [of 1979]." The court then made a proper general statement to all members of the venire. At this point counsel agreed to release the court reporter. The record shows only that the jury was further examined by counsel and this continued until 12 jurors and two alternates had been selected. The record does not reflect directly further questions put to the juror Linderall and her responses.

After selection of the jury and outside of their presence, the record shows that defendant's counsel objected to the fact that they were required to use a peremptory challenge to remove juror Linderall from the panel. In considering and denying this contention, the record shows the court and the parties agreed that during the questioning juror Linderall was also asked as to whether the fact that her brother was killed by five blacks would prejudice her against the defendant. The prospective juror gave a negative response to this question. Apparently the trial judge denied a challenge for cause against her made by the defense. The defense then removed her by peremptory challenge.

In considering the contention of defense counsel, the trial court stated the prospective juror did not place emphasis "on five blacks." The trial court stated:

"She merely responded to that question and answered her brother was killed by five blacks. There was no change in her tone, none whatsoever, that the court ask her if she could be fair and impartial; and I asked her if the State did not prove the defendant guilty beyond a reasonable doubt, whether she would sign a not guilty verdict; * * *."

Several insurmountable difficulties prevent use of this argument by the defendant:

(1) The record before us, not completely taken down and transcribed by the court reporter, fails to show in detail precisely what occurred.

(2) The record fails completely to show how many peremptory challenges the defense had exhausted and therefore whether the defense was prejudiced in any manner by use of the peremptory challenge in question.

(3) The trial judge who conducted this particular part of the ques-

tioning had a full and complete opportunity to note the demeanor of the prospective juror. *People v. Cole* (1973), 54 Ill. 2d 401, 414, 298 N.E.2d 705, speaks strongly concerning this type of situation:

> "The determination of whether or not the prospective juror possesses the state of mind which will enable him to give to an accused a fair and impartial trial rests in the sound discretion of the trial judge. His determination should not be set aside unless it is against the manifest weight of the evidence. *People v. Harris*, 38 Ill. 2d 552, 556; *Reynolds v. United States*, 98 U. S. 145, 159, 25 L. Ed. 244, 248; *Holt v. United States*, 218 U.S. 245, 248, 54 L. Ed. 1021, 1028, 31 S. Ct. 2; *Irving v. Dowd*, 366 U.S. 717, 723-724, 6 L. Ed. 2d 751, 756, 81 S. Ct. 1639."

■■ (4) In our opinion, the entire claim of prejudice against the defendant here is based upon pure conjecture. It has been "consistently held that a claim of prejudice cannot be founded on mere conjecture." *People v. Lewis* (1975), 60 Ill. 2d 152, 158, 330 N.E.2d 857, and authorities there cited.

For these reasons the judgment appealed from is affirmed.

Judgment affirmed.

McGLOON and O'CONNOR, JJ., concur.