THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
TONY CAMPBELL, Defendant-Appellant.

First District (3rd Division)   No. 1—89—0881

Opinion filed July 29, 1992.

Rita A. Fry, Public Defender, of Chicago (Mary C. Arundel, Assistant Public Defender, of counsel), for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, William Pistorius, and Joseph P. Roddy, Assistant State's Attorneys, of counsel), for the People.

JUSTICE TULLY delivered the opinion of the court:

Defendant Tony Campbell was indicted for the murder of Larry Wallace. Following a jury trial, Campbell was convicted of first-degree murder and sentenced to 40 years' imprisonment. Defendant appeals the conviction as well as the sentence.

On December 12, 1986, Larry Wallace visited a friend in an apartment building at 140 North Wood Street in the City of Chicago. Wallace entered the building around midnight, and while in the building's vestibule, Wallace was gunned down by unknown assailants. The examining pathologist adduced the cause of death to be multiple gunshot wounds to the chest, back, buttocks, hip, thigh and cheek. The stipulated testimony of a firearms expert indicated that the seven bullet casings recovered were of a type used in a submachine gun (an "Uzi"), and a .25 automatic handgun.

Sheila Wilkerson testified that on the evening of the murder, defendant, along with Napoleon English and Vernon Holman, visited her apartment at 141 North Wolcott Street. This building is part of the Henry Horner Homes housing project and is located across a field from the 140 North Wood building, also part of the housing project. Wilkerson said that all three were members of a gang, the Vice Lords, and

that she had previously sold cocaine for Napoleon English. Defendant arrived with a bag, containing gun parts. Napoleon English phoned someone and explained that they were going to "make a hit" at midnight when the police detectives changed shifts. English told defendant to phone Sylvester Brown, who arrived shortly thereafter. English then took an Uzi out of his coat, and defendant and Vernon Holman assembled the gun parts into shotguns. Sylvester Brown pulled a small black handgun from his sock.

All four men left the building and walked to the building at 140 North Wood. A couple of seconds later, Wilkerson heard multiple gunshots, resembling a machine gun and a shotgun. From her window, she saw all four men standing in the parking lot of the neighboring building. Wilkerson also stated that her building was controlled by the Vice Lords gang and that 140 North Wood was controlled by a rival gang, the Gangster Stones.

Aaron Ramey testified that he was about 30 feet from the building's southside entrance when he heard rapid gunfire. He then saw three men exit the northside of the building, running across the field toward the 141 Wolcott building. Two were carrying shotguns, approximately 24 to 30 inches in length. A few seconds later he saw Tony Campbell exit the southside of the building. He saw Campbell's face from about 30 feet away. He stated that Campbell was carrying a long gun, with a clip hanging from its barrel. All four men ran into the building adjoining the 141 Wolcott building. Ramey had known Tony Campbell for about 11 years.

Ramey then entered the lobby of the 140 Wood building and found the body of Larry Wallace in a pool of blood. When the police arrived, Ramey told them what he had witnessed and identified Tony Campbell as one of the assailants. Ramey said that he and the victim had been associated with the Gangster Stones many years previously. He admitted knowing many members of the Gangster Stones and he knew that Tony Campbell was a member of the Vice Lords.

On appeal, defendant asserts five errors: (1) the trial court failed to strike testimony regarding gangs and the gang affiliations of defendant and victim; (2) the trial court improperly commented on evidence during cross-examination; (3) two of the State's closing arguments were improper, denying defendant a fair trial; (4) the State failed to prove defendant guilty beyond a reasonable doubt; and (5) the 40-year sentence was excessive, in light of defendant's rehabilitative potential.

We first consider the evidence of gang affiliations. Officer Toussas testified that the Vice Lords gang controlled the 141 Wolcott building and that the Gangster Stones controlled the 140 Wood building. He also

said he knew defendant to be a member of the Vice Lords. Defense counsel motioned to strike this testimony. The trial judge indicated that had an objection been made *during* the testimony, he might have sustained it, but to strike it *post-factum* would be pointless, since it was already in evidence.

■ Proof of gang membership is admissible where such membership is related to the offense charged. (*People v. Wadley* (1988), 169 Ill. App. 3d 1036, 1043-44, 523 N.E.2d 1249, 1255; *People v. Calderon* (1981), 98 Ill. App. 3d 657, 660, 424 N.E.2d 671, 673; *People v. Miller* (1981), 101 Ill. App. 3d 1029, 1034, 428 N.E.2d 1038, 1043.) Such evidence is relevant, where it demonstrates a common design or plan. To this end, it may supply defendant's motive for committing the offense tried. (*People v. Hairston* (1970), 46 Ill. 2d 348, 372, 263 N.E.2d 840, 854, *cert. denied* (1971), 402 U.S. 972, 29 L. Ed. 2d 136, 91 S. Ct. 1658.) In addition to being probative as to motive, the evidence must somehow be tied to defendant. For instance, gang-related evidence has been held inadmissible where there is no reasonable basis to infer that defendant knew about a particular gang conflict or was in fact associated with any gang. *People v. Smith* (1990), 141 Ill. 2d 40, 58, 565 N.E.2d 900, 907.

In the instant case, both Sheila Wilkerson and Aaron Ramey testified, *prior* to Officer Toussas, that they knew defendant to be a member of the Vice Lords gang. In fact, it was the defense counsel who questioned Ramey as to his gang affiliations and those of defendant. Sheila Wilkerson testified that defendant was a member of the Vice Lords, that the Vice Lords controlled her building and that the Gangster Stones, a rival gang, controlled the building where the victim was shot. During all of this testimony, defense counsel never once objected to the introduction of gang-related evidence. Wilkerson also testified that Napoleon English stated the "hit" would be on "the Stones." Given the activities of defendant on the night of the murder, it can reasonably be inferred that defendant knew of the Vice Lords and its rival gang, the Gangster Stones. The gang-related evidence was not only "related" to the offense charged, it was a central issue in the murder of Larry Wallace. For all of these reasons, we find that the trial court properly admitted the testimony of Officer Toussas concerning gang activity.

■ The next issue on appeal concerns the following comments by the trial court, during the cross-examination of Detective Victor Switski:

"DEFENSE: You also looked pursuant to your investigation for a Kenny Hardy, did you not?

WITNESS: Correct.

DEFENSE: You also looked for a man named Jimmie Lee, is that correct?

STATE: Objection, Judge.

THE COURT: What is the significance? That objection is sustained. Ask the next question.

DEFENSE: Well, you didn't just go looking for Tony Campbell, correct?

WITNESS: Correct.

DEFENSE: You did look for Jimmie Lee and Kenny Hardy?

STATE: Objection.

THE COURT: His answer is yes. So what. Let's go.

DEFENSE: Fine. You looked for them after having a conversation with these witnesses, correct?

WITNESS: Correct."

In a later motion for a mistrial, the defense counsel objected to the "so what" comment of the court, indicating it was an improper comment on the evidence. The trial judge denied the motion, explaining that he was referring to the significance of the question. The trial judge believed that defense counsel was trying to elicit hearsay from witnesses at the scene, who gave these two other names to the detective being cross-examined. The trial judge also noted he was helping defense counsel by keeping out hearsay from these witnesses about whether Tony Campbell had committed the shooting.

Because a jury may be unduly influenced by the comments or actions of the trial judge, every defendant is entitled to a trial free from improper or prejudicial remarks by the presiding judge. (*People v. Heidorn* (1983), 114 Ill. App. 3d 933, 936, 449 N.E.2d 568, 572.) Consequently, it is incumbent upon the trial judge not to do or say anything which might convey his feelings or opinions of the case in the presence of the jury. (*People v. Santucci* (1962), 24 Ill. 2d 93, 98, 180 N.E.2d 491, 493.) A new trial may be warranted where the trial judge invades the province of the jury, by commenting upon the credibility of particular witnesses (*People v. Brown* (1990), 200 Ill. App. 3d 566, 577, 558 N.E.2d 309, 315), by repeatedly admonishing or interrupting counsel (*People v. Eckert* (1990), 194 Ill. App. 3d 667, 673, 551 N.E.2d 820, 824), by displaying a hostile attitude toward a witness in a criminal trial (*People v. Marino* (1953), 414 Ill. 445, 451, 111 N.E.2d 534, 537), or by injecting humor into the proceedings (*People v. Bernatowicz* (1952), 413 Ill. 181, 188, 108 N.E.2d 479, 483).

In this case, the trial judge did improperly comment upon the testimony of the witness with his "so what" remark. Although the judge later explained that he was referring to the legal relevancy of the question and was attempting to exclude hearsay testimony, these explanations were not discussed in the presence of the jury. Moreover, the aver-

age juror would not understand the *legal* significance of the judge's remark. A lay person would understand the judge's comment to signify that the question posed was totally insignificant and not to be considered by the jury.

While we find this comment to be improper, we cannot say that this single remark denied defendant a fair trial. Defense counsel asked the same question three times, and it was only after the third time that the trial judge remarked, "So what. Let's go on." It would appear as though the judge was trying to both caution counsel for asking repetitious and improper questions and to expedite the proceedings. (See *People v. Merz* (1984), 122 Ill. App. 3d 972, 978, 461 N.E.2d 1380, 1385.) Considering the record in its entirety, we cannot say that this single comment by the trial judge denied defendant a fair and impartial trial.

■ The third issue on appeal concerns two of the prosecutor's comments during closing argument. First, defendant asserts that the following remarks of the prosecutor apprised the jury of defendant's failure to testify on his own behalf, and thus, his constitutional rights were violated:

> "[T]here are six people in the world who could have told you what happened in that apartment on December 12th. One was a year old at the time, so he couldn't do it. Four others armed themselves *** and left. That only leaves one person. Without that one person you would have never heard about this conspiracy, about this plan to get the Stones."

A prosecutor may not directly or indirectly comment on a defendant's failure to take the stand in his own defense. (*People v. Lyles* (1985), 106 Ill. 2d 373, 390, 478 N.E.2d 291, 297, *cert. denied* (1985), 474 U.S. 859, 88 L. Ed. 2d 141, 106 S. Ct. 171.) Any such comment would violate a defendant's fifth amendment right against self-incrimination. (*Griffin v. California* (1965), 380 U.S. 609, 14 L. Ed. 2d 106, 85 S. Ct. 1229; Ill. Rev. Stat. 1989, ch. 38, par. 155–1.) The appropriate standard for determining a fifth amendment violation is whether or not the comments at issue were intended or calculated to direct the jury's attention to the defendant's failure to testify. (*People v. Quinn* (1988), 173 Ill. App. 3d 597, 602, 527 N.E.2d 905, 909.) For instance, a prosecutor may highlight the fact that the State's evidence is uncontradicted (*People v. Starks* (1988), 169 Ill. App. 3d 588, 600, 523 N.E.2d 983, 991), where the defendant is the only one who could contradict it (*People v. Leonard* (1988), 171 Ill. App. 3d 380, 386, 526 N.E.2d 397, 400-01), so long as such comments do not direct attention to the defendant's silence.

The prosecutor's comments in this case emphasize the fact that a key witness, Sheila Wilkerson, was the only *testifying* witness who could

have explained the plot to make a "hit" on a rival gang member. The only direct remark about defendant was that he "armed [himself] and left [the apartment.]" Nothing was directly or indirectly said about defendant's silence at trial or his failure to testify on his own behalf. Of course, one could draw the inference that defendant could have contradicted Sheila Wilkerson's version of the facts had he testified. But the prosecutor did not even directly mention that Wilkerson's testimony was "unrebutted" or "unrefuted." Because the prosecutor did not unequivocally direct the attention of the jury to defendant's silence at trial, we cannot conclude that these remarks violated defendant's right against self-incrimination.

■ The second series of closing remarks refer to defendant's relationship with Sheila Wilkerson, who testified at trial that she sold narcotics for Napoleon English, a participant in the murder plot:

"[Sheila Wilkerson] has nowhere to go.

Him [defendant] and his buddies are using her to push their narcotics. They come to her house on a daily basis. *** They used her folks. They used her to sell dope."

Defendant argues that he was never directly implicated in the drug-dealing activities of Napoleon English and Sheila Wilkerson. He contends these remarks amounted to a misstatement of the evidence, implying he was guilty of other crimes and prejudicing his right to a fair trial.

While it is improper for a prosecutor to misstate evidence during closing argument to the jury, such conduct warrants reversal only where it is a material factor in the defendant's conviction. (*People v. McKnight* (1979), 72 Ill. App. 3d 136, 145, 390 N.E.2d 379, 387.) Arguments and statements based upon the facts in evidence, or upon reasonable inferences drawn therefrom, are within the scope of proper argument. (*People v. Terry* (1984), 99 Ill. 2d 508, 517, 460 N.E.2d 746, 750.) Sheila Wilkerson testified that she sold cocaine for the Vice Lords. She also identified defendant as a member of the Vice Lords. This testimony was elicited by defense counsel in an effort to impeach the credibility of Wilkerson. Based upon the evidence, we find it was reasonable for the prosecutor to infer that defendant was involved in the drug-selling activities of the Vice Lords and Sheila Wilkerson. In any case, we do not find that these comments were material to defendant's conviction.

■ We next consider whether the State proved defendant guilty beyond a reasonable doubt. Defendant argues he was convicted based upon insufficient or tainted evidence. First, there were no eyewitnesses to the shooting of Larry Wallace. Secondly, two of the State's witnesses, Sheila Wilkerson and Aaron Ramey, possibly had a motive to lie. Wilkerson testified that just prior to her grand jury appearance, the police officers

604

who escorted her told her that she could be charged with murder and her infant son would be taken from her. Another officer told her if she did not cooperate, she would go to jail. Aaron Ramey, who allegedly witnessed defendant fleeing the scene of the crime, had been formerly affiliated with the Gangster Stones, a rival gang. Ramey kept in contact with friends in the gang and knew that the victim, Larry Wallace, was a Gangster Stone. He also knew defendant to be a member of the Vice Lords.

Once a defendant has been found guilty, upon judicial review, all evidence is to be considered in a light most favorable to the prosecution. The relevant question is whether, after considering the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. (*People v. Young* (1989), 128 Ill. 2d 1, 49, 538 N.E.2d 461, 472-73, citing *Jackson v. Virginia* (1979), 443 U.S. 307, 318-19, 61 L. Ed. 2d 560, 573-74, 99 S. Ct. 2781, 2788-89.) It is the jury's function to determine the accused's guilt or innocence and a conviction will not be overturned unless the evidence is so improbable as to justify a reasonable doubt of defendant's guilt. *People v. Eyler* (1989), 133 Ill. 2d 173, 191, 549 N.E.2d 268, 276.

Defendant argues, and we agree, that the evidence against him is entirely circumstantial. Defendant, however, incorrectly asserts that the proper standard of review is the reasonable hypothesis of innocence test. Under this standard, where the evidence is wholly circumstantial and presents an alternative hypothesis consistent with innocence, this hypothesis should be adopted in preference to guilt. However, the Illinois Supreme Court has rejected this standard by applying the reasonable doubt test to affirm convictions based entirely upon circumstantial evidence. *People v. Linscott* (1986), 114 Ill. 2d 340, 500 N.E.2d 420, *rev'd and remanded* (1987), 159 Ill. App. 3d 71, 511 N.E.2d 1303, *vacated* (1991), 142 Ill. 2d 22, 566 N.E.2d 1355; *People v. Hendricks* (1990), 137 Ill. 2d 31, 560 N.E.2d 611; *People v. Eyler* (1989), 133 Ill. 2d 173, 549 N.E.2d 268.

Although the State's evidence is circumstantial, this is not a close case. Shortly before the murder, a key witness, Sheila Wilkerson, saw defendant with three other males and overheard their plans to "make a hit" on a member of the Gangster Stones gang. They armed themselves with various guns, one of which was an Uzi submachine gun. She then saw all four standing in the parking lot just outside the building where the shooting occurred. A few seconds later she heard the sound of rapid gunfire. Aaron Ramey heard the same gunfire. Immediately thereafter, he saw three males running from the scene. A fourth male fled from

about 30 feet away in a well-lit area. He identified this man to be defendant, Tony Campbell. Campbell was carrying a long gun with a clip under its barrel. The bullets and casings later recovered were consistent with an Uzi and an automatic handgun.

All of the foregoing evidence was presented to the jury. The defense counsel did not present any evidence to refute or rebut this evidence. We, therefore, hold that the evidence in this case was sufficient to support defendant's conviction.

■ Finally, we examine whether the sentence imposed was excessive. In aggravation, the State presented defendant's prior criminal record, indicating a robbery conviction, aggravated assault and criminal damage to property. The trial judge also noted that defendant was the one who supplied the weapons to the other assailants, describing him as one of the "ring leaders." In mitigation, the defense relied upon the "weight of the evidence that the State presented at trial." On his own behalf, defendant denied committing the crime.

The trial court is the proper forum for determining a suitable sentence and the court's decision in this regard is entitled to great deference and weight. (*People v. Perruquet* (1977), 68 Ill. 2d 149, 154, 368 N.E.2d 882, 884.) A 40-year sentence for murder is within the statutory limits set forth in the Unified Code of Corrections. Ill. Rev. Stat. 1987, ch. 38, par. 1005—8—1(a)(1)(a).

This was a senseless, gang-related killing. These gangs attempt to control entire neighborhoods, turning playgrounds and parks into combat zones, where enemy lines are drawn and innocent people become discarded casualties. Given the circumstances of the crime, the criminal record of defendant, his lack of remorse and the absence of mitigating factors presented to the trial court, we cannot say that a 40-year sentence for murder was an abuse of discretion.

For all of the foregoing reasons, the decision of the circuit court of Cook County is affirmed in all respects.

Affirmed.

GREIMAN, P.J., and CERDA, J., concur.