THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JOSE COLON, Defendant-Appellant.

First District (3rd Division)   No. 1—91—3119

Opinion filed June 30, 1993.

TULLY, P.J., dissenting.

Rita A. Fry, Public Defender, of Chicago (Ira Churgin, Assistant Public Defender, of counsel), for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, William Carroll, and William L. Toffenetti, Assistant State's Attorneys, of counsel), for the People.

JUSTICE GREIMAN delivered the opinion of the court:

Defendant Jose Colon was charged with the murder of Rafael Matamoros and the attempted murder of Nathan Iverson, both resulting from the same shooting incident. At defendant's first trial, a jury found him not guilty of attempted murder and was unable to reach a verdict as to the murder charge. At his second trial, defendant was found guilty of murder and sentenced to 50 years in prison.

Defendant alleges it was error (1) to allow evidence of gang membership to be admitted; (2) to allow evidence of another shooting. at companions of the victim in the same locale later in the same evening with which defendant was not charged and no evidence was offered that defendant was involved; (3) to instruct the jury that defendant made a statement relating to the offense; (4) to introduce hearsay evidence that witnesses, other than those who testified, had identified defendant as the offender; and (5) to sentence defendant to 50 years.

We reverse defendant's conviction because the State improperly introduced extensive gang evidence without the proper showing of relevancy and continually promoted a gang motive for the shooting so that evidence of gang membership completely pervaded defendant's trial and deprived defendant of a fair and impartial hearing.

On September 3, 1990, at approximately 11:30 p.m., Rafael Matamoros, Nathan Iverson and several other people were gathered around a car parked in front of an elementary school. As Matamoros sat on the car with his back to the street, a grey four-door car with a blue top and tinted windows stopped next to the parked car, and a man put his head out of the car window and then withdrew to the darkness of the car. Immediately after this, a hand with a pistol in it was extended from the window and fired several shots, after which the car sped off down the one-way street.

Two of the men grouped around the car, Rafael Matamoros and Nathan Iverson, had been shot, and Matamoros later died in the hospital. When some friends from the group visited the two victims at the hospital following the incident, an unknown individual fired shots at them as they left the building in the early morning hours of September 4, 1990, but no one was injured.

Daniel Rivera testified that, from approximately 3½ feet away, he observed the stopped car and a man whom he did not recognize with his head out of the window for approximately 10 seconds. Rivera saw only a left arm on the steering wheel before he saw a pistol emerge from the window and begin rapid firing. Rivera then ducked and ran.

Deandre Jackson, another of the group, testified that he saw the driver's face for approximately four to five seconds prior to the shooting and for several seconds after the shooting when the car did not immediately leave.

Nathan Iverson stated that he also saw the car stop approximately three to five feet from where he stood and a gun and arm emerge from the driver's side window and start shooting.

When police interviewed Iverson and Rivera for a description of the offender, they stated that there were two male white Hispanics, approximately 18 years old, but they could give no specific descriptions of hair, height, weight, eyes or other identifying characteristics. At the time, Jackson could give no description or even the race of the offenders. However, Rivera and Jackson did identify defendant in a lineup and in court as the man in the driver's seat of the car, but Iverson could not.

Rivera stated that the car was a 1970-76 Chevrolet Impala, four-door, light blue-green primer color. While other witnesses' descriptions of the car varied somewhat, they all agreed that the State's exhibit showing the car in which defendant was arrested accurately portrayed the car they had seen that night.

Defendant first contends that the trial judge erred in denying his motion to prohibit gang evidence when that evidence did not show the shooting was gang related or provide a motive for the shooting.

The State introduced evidence that defendant was a member of the Imperial Gangsters; that the victim, although not a gang member, was with Latin Kings when he was shot; that the shooting took place in Latin King territory; and that the Latin Kings and the Imperial Gangsters were members of rival gang coalitions.

Defendant contends that this evidence only shows membership in rival gangs and is not sufficient to prove that the shooting was gang related or that gang membership was the motive for the shooting.

Evidence of gang affiliations, gang involvement or gang activity is relevant if it tends "to make the existence of any fact that is of consequence to the determination of the action more probable or

less probable than it would be without the evidence." *People v. Lucas* (1992), 151 Ill. 2d 461, 480, 603 N.E.2d 460; *People v. Smith* (1990), 141 Ill. 2d 40, 58, 565 N.E.2d 900; *People v. Carson* (1992), 238 Ill. App. 3d 457, 464, 606 N.E.2d 363.

Evidence of gang activity is admissible to provide a motive for an otherwise inexplicable act, but such evidence is admissible only where there is proof that such membership or activity is related to the crime with which defendant is charged. *Smith*, 141 Ill. 2d at 58; *People v. Nichols* (1992), 235 Ill. App. 3d 499, 505-06, 601 N.E.2d 1217; *People v. Silva* (1992), 231 Ill. App. 3d 127, 139, 595 N.E.2d 1285.

■ Motive is not an essential element of the crime of murder, and the State has no obligation to prove motive in order to sustain a conviction of murder. While gang-related evidence which tends to show a motive may be admitted as relevant, that evidence, to be considered competent, must, at least to a slight degree, tend to establish the existence of the motive relied upon or alleged and it must be established that defendant knew of those facts. *People v. Easley* (1992), 148 Ill. 2d 281, 326, 592 N.E.2d 1036; *People v. Maldonado* (1992), 240 Ill. App. 3d 470, 475, 608 N.E.2d 499; *Carson*, 238 Ill. App. 3d at 464.

Two cases help distinguish when gang evidence is admissible: *Easley* (148 Ill. 2d 281, 592 N.E.2d 1036) and *Lucas* (151 Ill. 2d 461, 603 N.E.2d 460), both concerning the murder of a superintendent at the Pontiac Correctional Center by two inmates, Roosevelt Lucas and Ike Easley. The facts in those cases provide that Easley first stabbed the victim and Lucas then beat him about the head with a pipe. Both defendants were members of the Black Gangster Disciples gang. In their separate trials, the State presented certain evidence of their affiliation with the gang to support its theory that Lucas and Easley murdered the victim in retaliation for the death of another inmate who was a member of the Black Gangster Disciples.

In *Easley*, the supreme court found the evidence relating to gangs improperly admitted because the State failed to show that defendant had participated in or knew of a gang conspiracy or intent to kill the victim; rather, the State merely provided testimony by correctional officers that it was their opinion that defendant was a gang member. (*Easley*, 148 Ill. 2d at 328-29.) However, in *Lucas*, gang evidence was admissible since the State was able to demonstrate that defendant conceded he was a gang member and there was evidence he knew of a plan to retaliate against prison officials

for the death of his fellow gang member. *Lucas*, 151 Ill. 2d at 479-80.

In the present case, we find the State did not demonstrate, even to a slight degree, facts or circumstances that show the motive here was gang related and that defendant knew that the shooting was gang related or was intended to be gang related.

This case is distinguishable from other cases besides *Lucas* that admitted gang evidence: *Carson* (238 Ill. App. 3d at 466), where defendant admitted he was a gang member and that he knew prior to the shooting that the victim had allegedly shot at a codefendant, who intended to retaliate; *Nichols* (235 Ill. App. 3d at 506), where the defendant admitted he was a gang member, the shooter shouted a gang name before firing, and defendant bragged at the time of the occurrence that he had just killed two people; *Silva* (231 Ill. App. 3d at 139), where defendant shouted a gang slogan before the shooting and there was ample evidence that defendant was a gang member involved in a gang-related activity; and *People v. Buchanan* (1991), 211 Ill. App. 3d 305, 320, 570 N.E.2d 344, where there was evidence that defendant was still active in his gang, that defendant's building had recently been marked by a rival gang's insignia, and that there was an active dispute between the two gangs.

Here, no gang slogans were shouted at any time; no gang signs were flashed; no gang member claimed credit for the shooting; and no previous precipitating gang-related encounter was recounted. Rather, all that was alleged was that the accused was a member of a gang rivaling that of the victim's companions. After showing defendant's gang membership, the State argues merely that the victim and his companions were in Latin Kings territory at the time of the shooting, thus making them targets for defendant. While defendant here may have admitted his affiliation with a gang, there was no evidence that directly marks this shooting as gang related.

The State relies upon *People v. Norton* (1992), 244 Ill. App. 3d 82, which found gang evidence relevant in establishing a motive for the shooting. The evidence admitted was defendant's gang affiliation and testimony by a police officer that the area of the shooting was frequented by two gangs and drive-by shootings were common there. We must disagree with the view of the *Norton* court that when an area is frequented by gangs and is the site of drive-by shootings, that is enough to allow evidence of gang membership as motive for a crime committed in the area.

We follow the supreme court's rulings in *Lucas, Easley* and *Smith* that find there must be sufficient evidence demonstrating

that the crime at issue was related to gang involvement or gang activity and that the defendant was aware that gang activity was involved. *Lucas*, 151 Ill. 2d at 480; *Easley*, 148 Ill. 2d at 326; *Smith*, 141 Ill. 2d at 58.

We need no citation or scholarly journal as authority to mark the influence and power of gangs in our urban areas. Although we are engaged in a battle for the streets of our cities, we dare not use guilt by association as a tool of our criminal justice system.

Courts have consistently acknowledged that a deep and widespread prejudice automatically attaches to the disclosure of an accused's affiliation with a street gang, which is why gang-related evidence must be relevant to a particular defendant in a particular crime. (*People v. Gonzalez* (1991), 142 Ill. 2d 481, 489, 568 N.E.2d 864; *Smith*, 141 Ill. 2d at 58; *Carson*, 238 Ill. App. 3d at 464; *Nichols*, 235 Ill. App. 3d at 505.) Even though gangs exist in virtually all large urban areas, not all criminals belong to gangs, and to allow general testimony regarding gangs, without specific gang evidence relating to the crime in question, is to unduly prejudice a defendant.

While Rivera and Jackson were two eyewitness who identified defendant as the shooter and identified defendant's car as the vehicle they saw at the time of the shooting, we find it reversible error where the State was allowed to introduce extensive evidence of gang activity, nonspecific to the crime with which defendant was charged, throughout the trial to support its gang motive theory.

Defendant was cumulatively prejudiced by such evidence, and we cannot say that the State's evidence is so overwhelming that it can overcome such pervasive prejudice. The State agreed at oral argument that the evidence was not "a walk-over." Thus, we must reverse and remand for new trial.

■ The second issue defendant raises is that evidence of a second drive-by shooting was improperly introduced when defendant was not charged and there was no evidence connecting defendant with that shooting.

The trial court allowed the State to offer evidence that friends of the victim were shot at within several hours of the first shooting as they left the hospital to which the victims had been taken. The court allowed the State to introduce the incident to "establish that it is in such and such a territory" but that the court would "sustain the objection to there being any indication of who did the shooting because there is no evidence who did do the shooting."

As we have stated, gang evidence is admissible only when there is sufficient evidence demonstrating that the gang activity relates to the crime charged and that defendant was aware that gang activity was involved. (*Lucas*, 151 Ill. 2d at 480; *Easley*, 148 Ill. 2d at 326; *Smith*, 141 Ill. 2d at 58.) In this instance, we can see no relevance between the second shooting and the crime with which defendant was charged, particularly in light of the fact that the court acknowledged that the identity of the second shooter was unknown and there was no evidence linking defendant to the later shooting, such as an identification of his car, which several of the witnesses could have identified.

The State argues that the evidence was admissible to show the gang motive and the territorial nature of gang warfare. However, this admission of evidence improperly prejudiced defendant since we have found the State failed to make the requisite requirements to admit such evidence and the only reasonable connection the jury could make was that defendant was somehow involved in the second shooting.

■■ Defendant next charges that it was error for the trial court to instruct the jury over defense objection that defendant had made a "statement relating to the case."·

The State introduced evidence that two days prior to the shooting, defendant admitted that he was a gang member; two days after the shooting, defendant stated that he was an ex-gang member. The State introduced no other statements made by defendant.

The trial court instructed the jury:

> "You have before you evidence that the defendant made a statement relating to the offense charged in the indictment.
>
> It is for you to determine whether the defendant made the statement and if so, what weight should be given to the statement. In determining the weight to be given to a statement, you should consider all of the circumstances under which it was made."

Defendant argues that because his two statements relate solely to gang membership, the trial court's instruction to the jury to consider whether defendant's statement "related to the offense" was an instruction to consider defendant's gang membership and thus was improper.

The statements were admitted as part of the State's case in chief. Officer Dombrowski testified regarding gang evidence and stated that defendant told him two days prior to the shooting that he was an Imperial Gangster. Officer Finnelly investigated the

shooting, testified as to gang territories, and stated that, upon observing defendant in his car two days after the shooting, defendant stated that he was an ex-Imperial Gangster.

Jurors are assumed to follow the instructions of the trial court. (*People v. Jenkins* (1977), 69 Ill. 2d 61, 370 N.E.2d 532.) In the present case, it is clear that the two statements at issue relate to whether defendant was involved in gang activities. Even though the language of the instructions allows the jury to determine whether defendant made the statements at all, we find those statements were improperly admitted as part of the gang-related evidence testimony.

We reject the State's argument that the instruction should have been permitted because it goes to the gang motive theory of its case since we have found the State failed to present sufficient evidence that a gang motive was involved. Such an instruction only adds to the cumulative prejudice defendant suffers from the State's pervasive implications of gang involvement.

■ Defendant next argues that it was improper for the trial court to allow an officer to testify that two persons, other than the witnesses who testified at trial, identified defendant as the offender.

On direct examination by the State, Officer Paulnitsky testified that defendant was identified in a lineup by Rivera and Jackson. On cross-examination, the officer testified that defendant's lineup was also viewed by two other individuals, Gabriel Gonzales and Marvin King, but the officer did not state whether they made an identification. On redirect, when the State asked if either Gonzales or King made an identification, the officer answered "yes" over defendant's objections. Then the State asked the officer if "anyone" was arrested and the officer gave defendant's name.

Defendant argues that by informing the jury that he was the only person charged, the State also explicitly informed the jury that King and/or Gonzales had identified him, since the jury already knew that they had identified a person from the lineup. Defendant thus argues that it is hearsay to admit those witnesses' testimony where he did not have an opportunity to cross-examine them.

Hearsay is testimony of an out-of-court statement offered to prove the truth of the matter asserted, the value of which rests upon the credibility of the out-of-court declarant. (*People v. Miles* (1988), 176 Ill. App. 3d 758, 763, 531 N.E.2d 891.) The fundamental purpose of the hearsay rule is to test the value of assertions by exposing the source of the assertion to cross-examination by the party

against whom it is offered. *People v. Holman* (1984), 103 Ill. 2d 133, 148, 469 N.E.2d 119.

Testimony may constitute hearsay even though it does not specifically mention the content of the out-of-court statement, if the jury may infer the intent. *Holman*, 103 Ill. 2d at 148; *People v. Warmack* (1976), 44 Ill. App. 3d 243, 246, 358 N.E.2d 76.

Hearsay identification is reversible error when it serves as a substitute for courtroom identification or when it is used to strengthen or corroborate a weak identification; if, however, the testimony is merely cumulative or is supported by a positive identification and by other corroborative circumstances, it constitutes harmless error. *People v. Johnson* (1990), 202 Ill. App. 3d 417, 426, 559 N.E.2d 1041; *People v. Lopez* (1987), 152 Ill. App. 3d 667, 676, 504 N.E.2d 862; *People v. Anthony* (1980), 90 Ill. App. 3d 859, 864, 418 N.E.2d 757; *Warmack*, 44 Ill. App. 3d at 247.

We find here that such testimony constituted hearsay identification of defendant. If this case had been free of other errors, we might find that this error alone is not reversible since it might be considered merely cumulative of Jackson's and Rivera's positive identification of defendant and defendant's car at the scene of the crime. However, given the cumulative prejudice we have found against decedent arising out of the improperly allowed gang evidence, we find this error only adds to that prejudice denying defendant a fair and impartial trial.

Finally, defendant contends that the trial court abused its discretion when it sentenced him to 50 years in prison, alleging that the court failed to consider all mitigating factors. We need not discuss this issue since we reverse defendant's conviction and remand for new trial.

For all of the foregoing reasons, defendant's conviction is reversed and the matter remanded for a new trial.

Reversed and remanded.

CERDA, J., concurs.

PRESIDING JUSTICE TULLY, dissenting:

I must respectfully dissent from the majority's view that the admission of gang-related evidence warrants reversal of defendant's conviction.

The majority's reliance upon *People v. Easley* is misplaced. As the majority correctly notes, the State is not obliged to prove mo-

tive in order to sustain a murder conviction; however, where the State chooses to prove motive and the motive the State undertakes to prove is conspiracy, then "it must be shown that the accused knew of those facts" comprising the conspiracy. (*Easley*, 148 Ill. 2d at 326-27.) In *Easley*, the State proceeded on the theory that a prison inmate, Easley, acted in accordance with a gang conspiracy to murder the victim, a correctional officer. Because the State could not prove that defendant had been invited to gang meetings or otherwise prove defendant's participation in or knowledge of the conspiracy, the admission of gang membership was held erroneous.

Thus, when the State undertakes to prove facts which the State asserts constitute a motive for the crime charged, it must be shown that the accused knew of those facts. (See *People v. Smith* (1990), 141 Ill. 2d 40, 565 N.E.2d 908.) In *Smith*, the court held gang-related evidence to be inadmissible, where there was no basis to infer that defendant knew about a particular gang conflict or was in fact associated with any gang.

In the instant case, the State did not undertake to prove any particular plot or conspiratorial theory, which would have required specified actions or knowledge by defendant. Rather, the State proceeded on a much simpler, straightforward theory: that defendant, who by his own admission was a member of the Imperial Gangsters, entered the territory controlled by a rival gang, the Latin Kings, and upon seeing members of the Latin Kings sitting on a car in front of Lowell School, fired a round of shots from a passing car. Aside from a gang motive, this was an otherwise inexplicable murder. Moreover, the theory of a gang-related shooting was further corroborated by the subsequent unexplained shooting of the victims by a third, unrelated gang as they left the hospital where they had been treated. The hospital was located within the territory controlled by the gang known as the Dragons. The Dragons are allied with the Imperial Gangsters and are rivals of the Latin Kings.

Any evidence which tends to show that the accused had a motive for killing the victim is relevant. In order for such evidence to be competent, it must, at least to a slight degree, tend to establish the existence of the motive relied upon. Moreover, gang-related evidence has been held admissible where gang rivalry is the central motive in a case. See *People v. Campbell* (1992), 232 Ill. App. 3d 597, 597 N.E.2d 820.

It would behoove the majority to recognize that gang members ruthlessly control and terrorize large portions of the City of Chicago and have brought about the demise of many decent neighbor-

hoods. Gangs engage in the bloodthirsty, senseless killing of rival gang members simply because of their status in a rival gang or because they have entered territory controlled by a rival gang. The motive of the State in this instance is a general motive of territorial gang warfare unlike the very specific motive in the *Easley* case, where the State alleged the existence of a specific plot to kill the victim.

The evidence presented at trial sufficiently proved that defendant was a member of the Imperial Gangsters, that the victims were members of the Latin Kings and that the shooting took place on the territory of the Latin Kings. The State also sufficiently proved that defendant was aware of all of these facts. Therefore, evidence as to gang membership and territorial control was properly introduced to show that this was a gang-motivated shooting.